United States Court of Appeals.

Eleventh Circuit.

Nos. 94-8151, 94-8230.

UNITED STATES of America, Plaintiff-Appellee,

v.

George W. HIGH, Sr., Virginia C. High, Defendants-Appellants.

UNITED STATES of America, Plaintiff-Appellee,

v.

Robert L. WARD, Jr., Defendant-Appellant.

July 21, 1997.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:92-cr-182-12), Robert Vining, Judge.

Before HATCHETT, Chief Judge, TJOFLAT, Circuit Judge, and GODBOLD, Senior Circuit Judge.

PER CURIAM.

In this multiple-object cocaine distribution and possession case, we affirm the appellants' convictions for conspiracy to distribute and possess with intent to distribute cocaine, and aiding and abetting a conspiracy, but we reverse the appellants' convictions for conspiracy to launder drug proceeds, structure currency transactions and defraud the United States, following the Supreme Court's decision in *Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

Appellants George High, Virginia High and Robert Ward appeal their convictions and sentences on charges arising from a complex drug conspiracy. Among other things, the Highs contend that the evidence was insufficient to support their convictions on Count One of the indictment—conspiracy to distribute and possess with intent to distribute cocaine, and aiding and abetting a conspiracy. All the appellants contend that the district court gave an erroneous jury instruction which requires reversal of their convictions on Count Thirteen of the indictment—a multiple-object conspiracy to launder drug proceeds, structure currency transactions and defraud the United States. We affirm the Highs' convictions on Count One, and reverse the appellants'

convictions on Count Thirteen.[1]

## BACKGROUND

A. *District Court Proceedings*

On December 10, 1992, a grand jury indicted George High, Virginia High and Robert Ward along with a number of other alleged coconspirators, charging that they were involved in a complex drug conspiracy. In a thirty-nine count indictment, Count One charged the Highs and others (not including Ward) with conspiring to distribute and possess with intent to distribute cocaine, and aiding and abetting a conspiracy, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846. Count Thirteen charged the Highs, Ward and others with engaging in a multiple-object conspiracy to launder drug proceeds, structure currency transactions and defraud the government, in violation of 18 U.S.C. §§ 2 and 371.

On September 21, 1993, the Highs and Ward (and one other alleged coconspirator) proceeded to trial together. The jury returned guilty verdicts against the Highs on Count One and against the Highs and Ward on Count Thirteen. The jury also returned guilty verdicts against George High on weapons charges, against Virginia High on money laundering charges, and against both the Highs on substantive charges of structuring currency transactions.[2] The district court

---

[1]The appellants also raise various other issues relating to the indictment and their sentences. These issues do not merit extensive discussion, and we thus address them here in summary fashion. In addition to the contentions described above, Virginia High contends that (1) the district court erred in instructing the jury on "deliberate ignorance" as to the intent requirement for money laundering; and (2) the district court's failure to grant her a bond hearing denied her procedural and substantive due process rights. Accordingly, Virginia High asserts that we must reverse her convictions on counts seventeen, eighteen, twenty, twenty-three and twenty-four of the indictment, and/or declare unconstitutional the statute regulating bail pending appeal. We find neither of these contentions persuasive and affirm pursuant to Eleventh Circuit Rule 36-1.

Virginia High and George High also contend that the district court erred in refusing to give the jury a "good faith" instruction on Count Thirteen of the indictment. Because we vacate the convictions on Count Thirteen for other reasons, this issue is moot. Robert Ward contends that the district court erred in sentencing him on Count Thirteen under money laundering guidelines rather than money structuring guidelines. This issue is also moot given our decision to vacate the Count Thirteen convictions.

[2]The district court subsequently vacated the convictions against the Highs on the structuring currency transactions charges in light of the Supreme Court's ruling in *Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). We discuss the *Ratzlaf* holding *infra.*

sentenced the Highs to ninety-seven month terms of incarceration, and Ward to a forty-one month term of incarceration. The Highs and Ward filed timely appeals challenging their convictions and/or sentences, although George High did not appeal his conviction on weapons charges.

B. *The Drug Conspiracy*

The drug conspiracy took place primarily in Atlanta, Georgia, during a period from at least 1987 until mid to late 1992. The conspiracy involved a large number of cocaine wholesalers who were connected in a vertically and horizontally integrated cocaine distribution network operating in the metropolitan Atlanta area. The conspiracy also involved the cocaine wholesalers' "legitimate" business associates who used their enterprises to help the cocaine wholesalers convert large drug cash flows into goods, services and other assets. According to the government, some of the cocaine wholesalers had a particularly extensive—and ultimately illegal—relationship with George and Virginia High, who owned and operated a commercial and residential real estate business, and Robert Ward, who brokered automobiles.

At trial, the government introduced evidence that at various levels of the distribution chain the cocaine wholesalers realized profits of between $1,000 and $10,000 in cash on the sale of each kilogram of cocaine. According to trial witnesses, the cocaine wholesalers then sought out "legitimate" business associates to help convert this cash into other, more useful types of assets, such as real estate and automobiles. George and Virginia High, owners and operators of High Realty, allegedly served as two such business associates for the cocaine wholesalers.

At trial, the government introduced voluminous evidence of the illicit relationship between the Highs and the cocaine wholesalers. In particular, the government presented evidence that George High, High Realty's "broker," and Virginia High, a High Realty sales associate, purchased several properties for the cocaine wholesalers and structured the purchase transactions in manners that concealed the source of the money used to buy the property, and circumvented the currency transaction reporting requirements contained in 31 U.S.C. § 5313(a). On one occasion in 1989, for instance, George High helped cocaine wholesaler Sims Jinks purchase a residence in DeKalb County, Georgia. Jinks supplied George High with $35,000 in cash that George High converted into

five separate cashier's checks to make the down payment on the residence. Jinks and George High made the remaining $45,000 in payments on the residence directly to the seller in cash at the High Realty office.

A year later, Virginia High helped Jinks purchase another residence. As before, Jinks provided $35,000 in cash for the down payment, and Virginia High obtained five cashier's checks to make the down payment to the seller. Jinks paid the remaining $200,000 owed on the balance of the mortgage in cash over a fourteen-month period of time. Although Jinks owned the residence, it was purchased in Virginia High's name. When the government arrested Jinks and notified Virginia High that it intended to seize the residence, Jinks and the Highs executed deeds transferring title of the residence to Jinks. This allowed Jinks to mortgage the property and obtain a large line of credit, depriving the government of much of the residence's seizure value.

The government presented evidence showing that the Highs received and dealt with hundreds of thousands of dollars in cash derived from the unlawful activities of several cocaine wholesalers. In addition to helping the cocaine wholesalers make purchases, the Highs also managed some of the cocaine wholesalers' properties and maintained the landscape of those properties.

The government also introduced evidence that Ward operated as an automobile broker for one of the cocaine wholesalers. On one occasion in 1989, for instance, Ward purchased a $32,000 Cadillac automobile for the mother of one cocaine wholesaler. Ward received cash for the automobile from the cocaine wholesaler and then converted the cash into cashier's checks—all in amounts less than $10,000. Ward purchased the automobile in his own name, and then later transferred title to the cocaine wholesaler's mother. At trial, the cocaine wholesaler testified that he paid Ward $1,000 as a commission for purchasing the automobile. Ward also purchased a number of other high-priced automobiles at the direction of the cocaine wholesalers, often keeping the automobiles titled in his own name even though they actually belonged to various cocaine wholesalers.

## ISSUES

We discuss two issues: (1) whether sufficient evidence supports the Highs' convictions on

Count One for conspiracy to distribute and possess with intent to distribute cocaine, and aiding and abetting a conspiracy, and (2) whether the district court's erroneous instruction on the elements of the structuring offense in the multiple-object conspiracy of Count Thirteen warrants a reversal of the appellants' convictions on that count.

DISCUSSION

A. *Sufficiency of the Evidence on the Count One Charge*

Whether sufficient evidence supports the Highs' convictions on Count One is a question of law we review *de novo. United States v. Massey,* 89 F.3d 1433, 1438 (11th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 983, 136 L.Ed.2d 865 (1997). In so doing, we review the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict. We will uphold the jury's verdict if a reasonable factfinder could conclude that the evidence establishes the Highs' guilt beyond a reasonable doubt. *United States v. Starke,* 62 F.3d 1374, 1380 (11th Cir.1995). To sustain a conspiracy conviction, we must conclude that a reasonable factfinder could determine that (1) an agreement existed among two or more persons; (2) that the defendant knew of the general purpose of the agreement; and (3) that the defendant knowingly and voluntarily participated in the agreement. *United States v. Ramsdale,* 61 F.3d 825, 829 (11th Cir.1995). Because a conspiracy is generally secretive, a reasonable factfinder may infer its existence from the surrounding circumstances. *United States v. Simon,* 839 F.2d 1461, 1469 (11th Cir.), *cert. denied,* 487 U.S. 1223, 108 S.Ct. 2883, 101 L.Ed.2d 917, *and cert. denied,* 488 U.S. 861, 109 S.Ct. 158, 102 L.Ed.2d 129 (1988). When, as here, a conspiracy conviction may be based on an aider and abettor theory of liability pursuant to 18 U.S.C. § 2, the evidence must show that the conspiracy occurred, and that "the defendant associated himself with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." *United States v. Bryant,* 671 F.2d 450, 454 (11th Cir.1982).

The Highs contend that the government failed to present evidence that they knew about the conspiracy to distribute and possess with intent to distribute cocaine, and voluntarily joined the conspiracy. According to the Highs, the conspiracy had three objectives: (1) to acquire cocaine for

the purpose of distribution;  (2) to acquire property as fruits of an unlawful scheme to distribute cocaine;  and (3) to conceal the wealth derived from the distribution of cocaine through the use of false and fictitious names.  The Highs contend that no evidence existed showing that Virginia High was involved with the cocaine or assisted the cocaine wholesalers in using false and fictitious names. The Highs also contend that no evidence existed that establishes a substantial link between George High and the drug conspiracy.  The Highs further contend that any services that they provided that helped the cocaine wholesalers acquire property cannot constitute evidence of their participation in the conspiracy, as those services only potentially constitute evidence of money laundering—which was allegedly not an objective of the drug conspiracy described in Count One of the indictment.

The government counters that sufficient evidence existed to find the Highs guilty of the offense alleged in Count One of the indictment.  The government contends that the Highs knew the illicit source of the cocaine wholesalers' money and voluntarily helped them fulfill objects of the conspiracy, which included laundering the proceeds of the cocaine sales in order to ensure the continued success of the cocaine distribution network.  The government concedes that the Highs did not possess drugs, but contends that this is irrelevant, as the evidence showed that the Highs knew the illicit source of the money they received and invested that money in real estate on the cocaine wholesalers' behalf.

Upon review of the facts and evidence, we agree with the government that sufficient evidence existed to find the Highs guilty on Count One. At trial, the government presented circumstantial evidence that showed the Highs knew the source of the cocaine wholesalers' money and with that knowledge, continued to funnel their money, derived from unlawful activities, through High Realty.  Ample evidence demonstrated that the Highs voluntarily assisted the cocaine wholesalers in investing money in real estate.  This evidence showed that the Highs purposefully aided the cocaine wholesalers in their efforts to acquire property, and that the Highs helped the cocaine wholesalers conceal wealth using Virginia High's name on a deed for a residence that a cocaine wholesaler actually owned.

The unambiguous language of the indictment belies the Highs' contention that money

laundering was not an alleged objective of the drug conspiracy described in Count One of the indictment:

> Further, it was an object of the conspiracy that the coconspirators would conceal the wealth derived from the trafficking in cocaine ... and their use and ownership of instrumentalities of the crimes, including real property ... and United States currency, through the use of false and fictitious names, *and otherwise.*

(Emphasis added.) Moreover, to the extent that the Highs argue that money laundering activity cannot be a basis for establishing culpability in a drug conspiracy, that contention is meritless. In *United States v. Bollinger,* we held that a defendant involved only in the money laundering facet of the drug business could be considered a part of the conspiracy to distribute those drugs. 796 F.2d 1394, 1407-08 (11th Cir.1986), *modified on other grounds,* 837 F.2d 436 (11th Cir.), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988). The holding we set forth in *Bollinger* simply means that a money launderer may be held liable as a principal or aider and abettor of a drug conspiracy even though the money launderer's conduct takes place after the actual drug distribution activity. The rationale underlying our holding is based on a recognition that money laundering often ensures the success of the underlying substantive crime, drug trafficking. *See United States v. Perez,* 922 F.2d 782, 786 (11th Cir.) (money laundering can be an integral part of certain drug distribution conspiracies) (citation omitted), *cert. denied,* 501 U.S. 1223, 111 S.Ct. 2840, 115 L.Ed.2d 1009 (1991).

Given the more than sufficient evidence establishing the Highs' guilt regarding the charges in Count One of the indictment, we affirm their convictions on that count.

B. *Effect of the Flawed Jury Instructions on the Count Thirteen Conviction*

The second issue we address is whether the district court's erroneous instruction on one object of an offense in the multiple-object conspiracy of Count Thirteen warrants a reversal of the appellants' convictions on that count.

The district court's jury instruction regarding Count Thirteen required the government to prove beyond a reasonable doubt that appellants conspired to commit one of the offenses that was an object of the alleged conspiracy. These offenses included conspiracy to launder drug proceeds, in violation of 18 U.S.C. § 1956; structuring currency transactions to avoid the filing of currency

transaction reports, in violation of 31 U.S.C. § 5324; and defrauding the United States, in violation of 18 U.S.C. § 981. The district court further instructed that the jury had to agree unanimously upon the offenses the appellants conspired to commit. Because the three offenses described in Count Thirteen are substantive offenses in their own right, the district court also separately instructed the jury on the essential elements of those offenses. The district court instructed the jury regarding the structuring currency transactions offense, 31 U.S.C. § 5324, in accordance with our holding in *United States v. Brown,* 954 F.2d 1563 (11th Cir.), *cert. denied,* 506 U.S. 900, 113 S.Ct. 284, 121 L.Ed.2d 210 (1992). The government concedes that this instruction was improper in the wake of the Supreme Court's decision in *Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), decided during the pendency of this case.

Appellants all contend that their convictions on Count Thirteen must be reversed, because the structuring currency transactions instruction was incorrect as a matter of law.[3] They assert that where one object of a multiple-object conspiracy charge has no support as a matter of law, a conviction on the multiple-object conspiracy charge cannot be sustained. The government contends that reversal is not required, as the district court's general jury instruction on the multiple-object conspiracy was correct, curing any defect in the instruction regarding one of the alleged objects of the conspiracy.

We agree with the appellants that reversal is appropriate based on the facts of this case. The district court gave the following general instructions regarding the multiple-object conspiracy charged in Count Thirteen:

> [W]ith regard to the conspiracy alleged in count thirteen, the indictment charges that the defendants conspired to commit various violations of the law of the United States such as set out in Title 18, United States Code, Section 371. It is charged, in other words, that the defendants conspired to commit three separate substantive crimes or offenses.
>
> In such a case it is not necessary for the government to prove that the defendant under consideration willfully conspired to commit all of those substantive offenses. It would

---

[3]Counsel lodged a timely objection to the district court's instruction, obviating the need for review under the "plain error" standard in this case. Accordingly, we review the district court's instruction for "abuse of discretion." Any reliance the government places on the holding in *United States v. Vazquez,* 53 F.3d 1216 (11th Cir.1995)—which addresses the impact of an unobjected-to *Ratzlaf* error under "plain error" review—is thus misplaced.

> be sufficient if the government proved beyond a reasonable doubt that the defendant under consideration willfully conspired with someone to commit one or both [sic] offenses.

> But in that event, in order to return a verdict of guilty, you must unanimously agree upon which of the three offenses the defendant conspired to commit.

The district court then gave the following specific instruction regarding structuring currency transactions in violation of 31 U.S.C. § 5324(3):

> I charge you that the government need not prove the defendant was aware of the illegality of money structuring in order to convict the defendant of that offense under Title 31, United States Code, Section 5324(3).

This specific instruction was incorrect, as the Supreme Court held in *Ratzlaf* that a defendant may be convicted of violating section 5324 only upon a showing that the defendant "willfully" violated anti-structuring laws. 510 U.S. at 136-38, 114 S.Ct. at 657. According to the Court, the government must "prove that the defendant acted with knowledge that his conduct was unlawful" in order to prove a "willful" violation of section 5324. 510 U.S. at 137, 114 S.Ct. at 657. In other words, the Court's *Ratzlaf* opinion required the district court in this case to instruct the jury that the government *needed* to prove the defendant was aware that money structuring was illegal.

In our view, the district court's statement in the conspiracy instruction regarding the necessity of "willful" action did not cure its specific, erroneous instruction concerning the irrelevancy of proof of "willfulness" as to knowledge that structuring is illegal. It may be that the jury understood the conspiracy instruction to require the government to prove that the appellants willfully conspired to structure currency transactions. The jury however, may have understood the conspiracy instruction to require a showing of willfulness with respect to the money laundering or defrauding offenses, but not with regard to awareness that money structuring is illegal. Therefore, the jury may have convicted the appellants of conspiring to engage in structuring currency transactions without finding that they were aware that such structuring was illegal. As stated, such a conclusion would run afoul of *Ratzlaf*.

While it is true that the jury might have agreed unanimously to convict the appellants of conspiring to commit another offense, *e.g.,* money laundering, that *possibility* alone is insufficient to justify an affirmance. *See Griffin v. United States,* 502 U.S. 46, 52, 112 S.Ct. 466, 470-71, 116

L.Ed.2d 371 (1991) (where one of two objects of a conspiracy charge is insufficient as a matter of law "the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected") (citation omitted); *United States v. Martinez,* 14 F.3d 543, 553-54 (11th Cir.1994) (the existence of an alternative theory upon which a conviction may be based does not save a legal defect in the jury instructions); *United States v. Boots,* 80 F.3d 580, 589 (1st Cir.) (reversing section 371 multiple-object conspiracy conviction where court erred in instructing jury on one alleged object of conspiracy "because it is impossible to tell which ground the jury based the conspiracy conviction upon"), *cert. denied,* --- U.S. ----, 117 S.Ct. 263, 136 L.Ed.2d 188 (1996); *see also United States v. Range,* 94 F.3d 614, 620 (11th Cir.1996) ("A court must ... be able to determine with absolute certainty that the jury based its verdict on the ground on which it was properly instructed.") (quotations and citation omitted).

Accordingly, we must reverse the appellants' convictions on Count Thirteen of the indictment.

CONCLUSION

Because the evidence was sufficient, we affirm the Highs' convictions on Count One. Because we cannot determine whether the jury convicted the appellants on a legally sufficient basis on Count Thirteen, we reverse the convictions of the appellants on that count and remand for further proceedings consistent with this opinion.

AFFIRMED in part;  REVERSED and REMANDED in part.