KRAVITCH, Senior Circuit Judge,
dissenting in part and concurring in part:
I concur in Parts I and III of the majority opinion. I cannot join Part II of the opinion, however, because I am unable to determine with absolute certainty that the jury did not convict Charles Wilson of using a weapon during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), on the basis of jury instructions that were at odds with the Supreme Court’s decision in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Our precedent requires us to reverse Wilson’s section 924(c)(1) conviction and remand his case for a new trial; accordingly, I respectfully dissent.
As the majority opinion recounts, Wilson challenges his conviction for using or carrying a firearm during and in relation to a drug trafficking offense on the ground that the district court’s instruction to the jury conflicts with the Supreme Court’s unanimous definition of “use” of a firearm in Bailey. Nevertheless, because a police officer discovered the weapon on the dashboard of a car in which Wilson was a passenger, the evidence would have been sufficient to support a conviction for carrying the firearm. See Muscarello v. United States, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998).
We considered an analogous case in United States v. Range, 94 F.3d 614 (11th Cir.1996), and concluded that we could affirm a conviction under section 924(c)(1) despite a similarly erroneous instruction. We held that section 924(c)(1) was an “alternative means” statute and that the jury, therefore, could convict a defendant for either using or carrying a weapon. Id. at 619. In the face of a legally erroneous instruction on one of the alternative means, however, we explained that “[a] court must ... be able to ‘determine with absolute certainty that the jury based its [general] verdict on the ground on which it was properly instructed.’ ” Id. at 620 (quoting United States v. Miller, 84 F.3d 1244, 1257 (10th Cir.1996)).
The Range court affirmed the defendant’s conviction under the “carry” prong of section 924(c)(1) because it found “a complete absence of evidence from which the jury could have found ‘use,’ as opposed to ‘carrying,’ under the erroneous instruction.” Id. (emphasis added). The police in that case found a gun under the floor-mat on the passenger side of the vehicle, and the erroneous instruction informed the jury that possession of a firearm would not constitute use unless “the firearm played a purpose or function in carrying out the ... offense.”[1] The court concluded that because the evidence overwhelmingly supported a conviction for carrying the weapon and provided no support for a use conviction in compliance with the district court’s instruction, the jury must have based its general verdict on the correct grounds. Id. at 620.[2]
*1303 I agree with the majority opinion s annunciation of the law but find myself at odds with its application of the law to the facts of Wilson’s case. The evidence supports a conviction for carrying the weapon, but it is far from clear whether Wilson’s jury “must have” convicted him on that basis. First, and as the majority concedes, the pre-Bailey jury instruction the court gave in this case went further than the one we considered in Range. In addition to instructing that the “mere presence of a firearm” would not constitute “use,” as in Range,[3] the district court in this case told the jury:
It is enough if the firearm is present for protection or to facilitate the likelihood of success, whether or not it is actually used, or to instill courage in an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge occurred.[4]
This portion of the instruction is ambiguous because it does not specify whether the conduct described is sufficient to convict the defendant of using or of carrying the weapon.[5] The jury, therefore, easily could have relied upon this language to convict Wilson under the use prong of section 924(c)(1). If, for example, the jury concluded that the presence of the gun on the defendants’ dashboard offered Wilson protection, passively facilitated Wilson’s drug dealing, or emboldened him as he drove around town in possession of a significant quantity of crack cocaine, the instruction erroneously would have permitted the jury to convict Wilson of using— not carrying — the weapon even though he never actively had employed the weapon as Bailey requires.
The majority contends that the jury could not have relied upon this language to convict Wilson of using the firearm. The majority begins its argument by asserting that the jury could not have relied upon the facilitation of success language in the quoted instruction because there was no evidence that a drug transaction was imminent. See Maj. Op. at 1296; see also id. at 1295 (suggesting that the imminence of a drug transaction in Range implied use). The majority offers neither argument nor case support for its suggestion that the imminence of a drug transaction necessarily implies the use prong of section 924(c)(1) over the carry prong. The majority’s failure, however, is of no matter because the imminence of a drug transaction is a non sequitur in the context of this case. Section 924(c)(1) requires that the defendant use or carry the firearm “during and in relation to any ... drug trafficking crime,” and is not limited to drug transactions. In this case, Wilson’s possession of cocaine base with the intent to distribute it and his conspiracy to do the same supplied the predicate drug trafficking crimes. The *1304 question before the jury, therefore, was whether Wilson had used or carried the weapon “during and in relation to” those crimes — not whether he had used or carried the weapon in connection with an impending drug transaction. In my view, the jury easily could have concluded that the firearm’s presence facilitated the likelihood of success of Wilson’s conspiracy to distribute crack cocaine. Indeed, our own frequent observation that weapons constitute virtually indispensable tools of the drug trade,[6] draws into substantial question the majority’s conclusion that a jury could not have found that the gun in this case facilitated the success of Wilson’s drug conspiracy. As a result, the majority opinion’s independently unconvincing distinction between using and carrying a firearm serves no purpose because it cannot reassure us, as Range requires, that the jury could not have convicted Wilson of using rather than carrying the weapon.
I also respectfully disagree with the majority’s contention that the jury could not have found that the open presence of the gun on the car’s dashboard emboldened Wilson as he conducted his illegal activity. The majority contends that the jury could not have found both that Wilson had an opportunity to display the weapon for protection or intimidation and that the firearm instilled confidence in Wilson. See Maj. Op. at 1296. Wilson obviously had the opportunity to display the weapon because the sole reason for Wilson’s initial detention on October 17, 1994 was a police officer’s observation of the weapon on the dashboard. Id. at 1293. Furthermore, the prosecutor’s theory of the case concerning Wilson’s section 924(c)(1) charge was that the weapon had instilled him with courage and emboldened him while he was in possession of large quantities of cocaine. During closing argument, the prosecutor told the jury:
You know when people go out and they drink, and they get what’s called “Budweiser courage”? That’s what that gun is like. It instills courage in an actor like Mr. Wilson who has the authority to discharge it.[7]
Absent some suggestion that the prosecutor improperly misrepresented the evidence to the jury during the government’s closing argument, the jury certainly could have concluded that the weapon had emboldened Wilson as he engaged in his illegal activity and thus “used” the weapon to facilitate the drug transaction.
The majority concedes that the evidence would have permitted the jury to rely upon the first clause of the instruction’s last sentence to conclude that the firearm was present for protection. See Maj. Op. at 1296. I agree that the jury could have relied upon this section of the instruction and found (correctly) that the evidence supported Wilson’s conviction for carrying the weapon. Furthermore, I have no quarrel with the majority’s observation that it would not matter whether some or all of the jurors thought they were convicting Wilson of using rather than carrying the weapon. Cf. Range, 94 F.3d at 619 (noting that a section 924(c)(1) conviction does not require “jury unanimity ... with respect to the ‘use’ and ‘carry’ elements”). The equally probable possibilities that the jury relied upon one of the other two clauses of the instruction — neither of *1305 which would fit comfortably under section 924(c)(l)’s carry prong- — however, preclude our reliance on this possibility to affirm Wilson’s conviction. The majority’s analysis fails to acknowledge the broader implications of the instruction the court gave in this case and ignores what the jury could have found while faithfully applying the particular language quoted above. See, United States v. High, 117 F.3d 464, 470 (11th Cir.1997) (citing Range in support of the proposition that the mere possibility that the jury may have convicted on the proper grounds is insufficient to affirm a conviction).
In addition to my reluctance to join the majority’s speculation — from a cold appellate record — about what the jury must have decided when it entered its general verdict over three years ago, I find substantial reason for pause in the district court’s order on this matter. The court’s order explained that it was extremely unlikely that the jury had based its verdict on the carry prong of section 924(c)(1). The district court observed that the charge to the jury and the government’s theory of the ease both relied upon the use prong of the statute and ignored the carry prong:
Because both the court and the government emphasized the “use” prong of § 924(c)(1), it is likely that the jury convicted Wilson of using rather than carrying a firearm.... Thus, it appears extremely likely that the erroneous instruction on the definition of the word “use” deprived Wilson of a fundamentally fair trial, and that Wilson is entitled to a new trial on this charge.[8]
Although I agree that a properly instructed jury could have found Wilson guilty of carrying the weapon, given this report from the court of first instance, I do not see how we can find that the jury must have convicted Wilson of carrying rather than using the pistol.
Finally, even if we could claim to be convinced that the jury must have convicted Wilson of carrying rather than using the weapon in question, it is by no means clear that the jury received a proper instruction on that issue either. The Range court based its holding on the assumption that the district court correctly had charged the jury on the carrying prong of section 924(c)(1), see Range, 94 F.3d at 620, despite the defendant’s argument to the contrary on appeal because the defendant specifically had waived the argument before the district court, id. at 617. We have no such waiver before us in this case, and the district court’s charge to the jury does not define “carry.”[9] This omission further suggests that the jury did not convict Wilson on a charge for which it had received a proper instruction.
The majority’s opinion casts us, not in the familiar role of appellate judges, but as jurors, finding Wilson guilty of violating section 924(c)(1) on a theory markedly different from the one presented at trial. Although we all could agree that the government’s evidence would support Wilson’s conviction for carrying a firearm during and in relation to a drug trafficking offense, the law requires a properly instructed jury to make that determination in the first instance. I am convinced that Range requires us to reverse Wilson’s section 924(c)(1) conviction and remand his case for a new trial; I respectfully DISSENT.

. In pertinent part, the jury in Range received the following instruction:
To show use of the firearm the government need not prove that the firearm was fired, brandished, or even displayed during the drug-trafficking offense. However, mere presence of the firearm would not constitute use within the meaning of the statute. Rather, possession of a firearm constitutes use in relation to the drug-trafficking offense if the firearm played a purpose or function in carrying out the drug-trafficking offense.
Range, 94 F.3d at 617.

. We applied a similar analysis in United States v. Quinn, 123 F.3d 1415, 1428-29 (11th Cir.1997), and found that the jury could not have convicted the defendant of using the weapon — as instructed by the district court— because police discovered the weapon some 60 feet away from the defendant. Only then *1303 did we uphold the § 924(c)(1) conviction under the carry prong because the weapon was in the defendant’s car, which he had driven to the location of the drug transaction. Id.

.To this extent the first part of the instruction in this case differs from the one considered in Range, quoted supra at note 1, the differences are superficial:
To establish that a firearm was used or carried during or in relation to a drug trafficking crime, the government need not prove that the firearm was fired, brandished, or even displayed during the drug trafficking crime. However, the mere presence of a firearm does not constitute use within the meaning of the law. Possession of a firearm constitutes use in relation to a drug trafficking crime if the possession is an integral part of, and facilitates the commission of, the drug trafficking crime.
Jury Ins., Rl-44 at 8.

. Jury Ins., Rl-44 at 8.

. The majority opinion admits as much in its statement that "th[is] sentence [of the instruction] could just as easily have begun, 'It is enough to convict the defendant under this statute if....' It did not just explain or describe 'use' — it explained what was necessary to convict under section 924(c)(1), implicating both ‘use’ and ‘carry.’ ” Maj. Op. at 1296. Contrary to the majority's assertion, however, I do not suggest that this sentence is a use instruction, only that it is impossible to tell whether the sentence refers to a defendant's use, carrying, or both.

. We quoted the former Fifth Circuit on this point to uphold a jury’s verdict that gun violence and murder were reasonably foreseeable consequences of a drug conspiracy:
Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment, and other narcotic equipment.
United States v. Alvarez, 755 F.2d 830, 849 (11th Cir.1985) (quoting United States v. Perez, 648 F.2d 219, 224 (5th Cir. Unit B, June 15, 1981) (additional citations omitted)). See also United States v. Ramsdale, 61 F.3d 825, 829-30 (11th Cir.1995) (noting that guns are tools of the drug trade) (citing cases); United States v. Hromada, 49 F.3d 685, 689 & n. 8 (11th Cir.1995) (same).

. Dist. Ct. Mem. Op., Rl-71 at 3-4 (quoting the prosecutor’s argument).

. Dist. Ct. Mem. Op., R1-71 at 4-5 (internal punctuation, citation, and quotation omitted).

. See Jury Ins., R1-44 at 7-8; see also Dist. Ct. Mem. Op., R1-71 at 1-2 (explaining that although both the court’s instruction and the government's argument referred to the carry prong of § 924(c)(1), neither provided a definition for the term).