[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 96-6202

D. C. Docket No. CR95-192-E(01)

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/12/99
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER WILSON,

Defendant-Appellant.

No. 96-6739

D. C. Docket No. CR-95-192-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC HERNDON,

Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of Alabama

———————

(August 12, 1999)

Before TJOFLAT and HULL, Circuit Judges, and KRAVITCH, Senior Circuit Judge.

TJOFLAT, Circuit Judge::

Christopher Wilson and Eric Herndon were convicted in separate trials of charges relating to the trafficking of crack cocaine. They now appeal. Wilson challenges only one of his convictions. We find no infirmity in it and therefore affirm. Herndon challenges both his convictions and his sentences. We affirm his convictions, but set aside the sentences he received for his drug offenses and remand the case for resentencing.

I.

Beginning in January 1995 and continuing until August 1995, officers of the Macon County, Alabama, Sheriff's Department conducted surveillance on what they suspected to be a "crack house" – a place where cocaine base, or "crack cocaine," is sold – within their jurisdiction. Officers conducted visual surveillance on the house at all hours of the day and night. They observed countless people

visiting the house, many of whom were not from Macon County. Their visits were brief and often interrupted if police officers were in the vicinity. Two of the individuals whom officers regularly observed at the house were the appellants.

In addition to observing the activities at the crack house, officers also enlisted the services of a confidential informant who made several controlled buys of crack cocaine at the house. After one of these buys, officers raided the house, collecting drug paraphernalia and several weapons; Wilson was present in the house during the raid.

Roughly contemporaneous with this eight-month period of police surveillance, appellants were twice arrested for possession of crack cocaine. The first arrest occurred on October 17, 1994; officers in the Tuskegee, Alabama, Police Department, responding to a disturbance call at a local convenience store, detained appellants after observing a pistol on the dashboard of Herndon's car. Herndon was in the driver's seat at the time; Wilson occupied the other front seat. In the course of searching the vehicle for more weapons, the police found two pill bottles – one under each front seat – containing a combined total of seven grams of crack cocaine.

The second arrest occurred nine months later, on July 25, 1995. Officers in the Notasulga, Alabama, Police Department detained appellants – this time in

3

Wilson's car – at a license checkpoint. Because Wilson did not have a license, he was escorted to a patrol car. There, Wilson explained to the officer that he had some identification in his glove compartment, and an officer walked back to the car to retrieve it. When Herndon, who had remained in the car, opened the passenger door so the officer could search for the license, the officer observed a black leather case between the passenger seat, where Herndon was sitting, and the door. In the case the officer saw a plastic bag containing a "milky white substance," which was later determined to be forty-six grams of crack cocaine. At that moment, Wilson fled the scene on foot. Officers placed Herndon in the police cruiser and pursued Wilson; they apprehended him not far from the checkpoint.

On August 29, 1995, a Middle District of Alabama grand jury indicted appellants on four counts. Count I charged appellants with conspiracy to possess with intent to distribute crack cocaine between October 17, 1994, and July 25, 1995, in violation of 21 U.S.C. § 846 (1994).[1] Count II charged appellants with possession with intent to distribute crack cocaine on October 17, 1994, in violation

---

[1] Section 846 states, in part, as follows: "Any person who . . . conspires to commit any offense defined in this subchapter [of which section 841 is a part] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy."

of 21 U.S.C. § 841(a)(1) (1994).[2] Count III charged appellants with using and

carrying a firearm during and in relation to a drug trafficking crime (Counts I and

II), in violation of 18 U.S.C. § 924(c)(1) (1994).[3] Count IV charged appellants

with possession with intent to distribute crack cocaine on July 25, 1995, also in

violation of 21 U.S.C. § 841(a)(1).

At the time the indictment was returned, Wilson was in custody, and he

remained in custody throughout the prosecution of that case. Herndon was not

taken into custody until his arrest on January 6, 1996. Given his pre-trial detention

status, Wilson was tried first, in November 1995. A jury convicted him on all four

counts, and the court sentenced him to concurrent prison sentences of 151 months

for the drug offenses, and a consecutive prison sentence of 60 months for the

firearm offense.[4]

Herndon was tried in May 1996. After the district court direct the verdict for

Herndon on Count 3, the conspiracy charge, a jury found him guilty of counts I, II,

---

[2] Section 841(a)(1) states, in part, as follows: "[I]t shall be unlawful for any person knowingly or intentionally . . . [to] possess with intent to manufacture, distribute, or dispense, a controlled substance."

[3] Section 924(c)(1) states, in part, as follows: "Whoever, during and in relation to any . . . drug trafficking crime, . . . uses or carries a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime, be sentenced to imprisonment for five years."

[4] 18 U.S.C. § 924(c)(1) required the district court to impose a five-year term of imprisonment for the firearm offense, to run consecutively to Wilson's sentences on Counts 1, 2, and 4.

and IV of the indictment.  The court sentenced Herndon to concurrent prison terms of 135 months on Counts I and II and tp a consecutive prison term of 60 months on Count IV.

Wilson and Herndon now appeal.  In Part II, we address Wilson's appeal.  In Part III, we consider Herndon's appeal.

## II.

Wilson's sole challenge on appeal concerns his conviction for violating 18 U.S.C. § 924(c)(1), which prohibits a person, "during and in relation to any . . . drug trafficking crime," from "us[ing] or carr[ying] a firearm."  Specifically, Wilson contends that a Supreme Court decision that was handed down between his trial and his sentencing hearing, Bailey v. United States, 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995), mandates a retrial of Count III of his indictment, which alleged that Wilson "did knowingly use and carry a firearm" on October 17, 1994, in committing the offenses charged in Counts I and II.  Bailey significantly narrowed the "use" prong of section 924(c)(1) by requiring proof under that prong of "active employment" of the firearm in the commission of the underlying offense.  See id. at 144, 116 S. Ct. at 506.  Wilson claims that the Bailey decision's treatment of the "use" prong of section 924(c)(1) is important here given that (1)

the indictment alleged that Wilson "used and carried" a firearm, (2) the district court instructed the jury more extensively on the "use" prong than on the "carry" prong of section 924(c)(1), and (3) the prosecutor, in closing argument to the jury, focused on the word "use" in contending that the presence of the firearm on the dashboard of Herndon's automobile (from where the police seized the firearm) rendered Wilson guilty of the section 924(c)(1) offense. Wilson contends that, because there was no active employment of the firearm in this case, it was impermissible for the prosecutor to focus his argument on, and the court to charge the jury on, the "use" prong of section 924(c)(1).

At his sentencing hearing, Wilson, citing the intervening <u>Bailey</u> decision, moved the court to dismiss Count III; alternatively, he moved the court to grant him a new trial on that count. In essence, he claimed, as he does on appeal, (1) that the erroneous jury instruction on the "use" prong of section 924(c)(1) led to an unreliable jury verdict; and (2) that the evidence of "carrying" was insufficient to support a conviction under section 924(c)(1).[5] The court denied his motion.

We previously have had occasion to address these very claims. In <u>United States v. Range</u>, 94 F.3d 614, 617-20 (11th Cir. 1996), a gun was found under the

---

[5] We review sufficiency of the evidence claims <u>de novo</u>, drawing all reasonable inferences in favor of the Government. <u>See</u> <u>United States v. Gamboa</u>, 166 F.3d 1327, 1331 (11th Cir. 1999).

front seat floor mat of a car the defendant Range drove to the site of a drug transaction. The gun was found by surveillance agents when they arrested the participants in the transaction. Range was convicted of committing two drug offenses and of "using and carrying" a firearm while committing those offenses in violation of section 924(c)(1).[6] Id. at 616. He appealed, arguing both that the evidence was insufficient to support a conviction under the "carry" prong of section 924(c)(1), and that the district court's erroneous jury instruction on the "use" prong of section 924(c)(1) led to an unreliable jury verdict.

The panel first addressed Range's sufficiency claim; it found that the evidence of the firearm under the floor mat of the car was sufficient to support a jury finding that the defendant was "carrying" the firearm. Id. at 618; see also Muscarello v. United States, 524 U.S. 125, ___, 118 S. Ct. 1911, 1918-19, 141 L. Ed. 2d 111 (1998) (concluding that "carrying" for the purposes of section

---

[6] Although the indictment in Range alleged that Range "used" and "carried" a firearm during and in relation to a drug trafficking offense, the statute reads in the disjunctive, meaning that a defendant violates section 924(c)(1) if he "uses" or "carries" a firearm while committing the underlying offense. In that "use" and "carry" are alternative means of violating section 924(c)(1), "jury unanimity is not required with respect to the 'use' and 'carry' elements." Range, 94 F.3d at 619. In other words, a jury could legitimately convict a defendant even if some of the jurors thought that the defendant "used," but did not "carry," a firearm, while other jurors thought that the defendant "carried," but did not "use," a firearm.

As in Range, the indictment in the instant case charged the defendants with "using and carrying" a firearm during and in relation to drug trafficking offenses. As we conclude, infra, Wilson's conviction must be upheld because there is no doubt that he was carrying a firearm at the time he and Herndon were arrested on October 17, 1994.

8

924(c)(1) includes carrying a firearm in a vehicle, whether or not it is immediately accessible); United States v. Farris, 77 F.3d 391, 395-96 (11th Cir. 1996) (evidence sufficient to support a conviction under section 924(c)(1) when the gun was found in the glove compartment of a vehicle used as a drug distribution center). Clearly, then, in our case, the evidence, which established that the firearm was on the dashboard[7] of the vehicle in which Wilson was apprehended, was sufficient to support a finding that Wilson was "carrying" a firearm.

The Range court next addressed the district court's erroneous jury instruction on the "use" prong of section 924(c)(1). The district court instructed the jury as follows:

> Now members of the jury, as to Count Three, Title 18, United States Code, Section 924(c)(1), makes it a separate crime or offense for anyone to use or carry a firearm during and in relation to the commission of a drug trafficking offense.
> A defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: First, that the defendant committed the felony offense charged in count one and count two; second, that such offense was a drug trafficking offense;

---

[7] We see no merit in Wilson's argument that he was not carrying the firearm because it was on the driver's side of the dashboard, while he was seated in the passenger seat next to the driver, Herndon. The jury, having found that Wilson had conspired to traffic crack cocaine and that he possessed with intent to distribute crack cocaine at the time officers found appellants with the firearm, reasonably could have found that Wilson had as much access to, and control over, the firearm as did Herndon. Furthermore, the Supreme Court has held that immediate accessibility is not necessary to support a conviction under section 924(c)(1) for "carrying" a firearm. See Muscarello, 524 U.S. at ___, 118 S. Ct. at 1914, 1918-19 (concluding that both driver and passenger could be convicted of carrying firearms under section 924(c)(1) when the firearms were located in the trunk of the vehicle in which they were driving).

9

and third, that the defendant knowingly used or carried the firearm described in the indictment while committing such drug trafficking offense.

To show use of the firearm the government need not prove that the firearm was fired, brandished, or even displayed during the drug-trafficking offense. However, mere presence of the firearm would not constitute use within the meaning of the statute. Rather, possession of a firearm constitutes use in relation to the drug-trafficking offense if the firearm played a purpose or function in carrying out the drug-trafficking offense.

Range, 94 F.3d at 617. The government properly conceded on appeal that the instruction on "use" was erroneous under Bailey; it contended, however, that Range's conviction should be upheld "because the evidence was sufficient to establish that Range carried the firearm" in committing the charged drug offenses. Id. The panel disagreed; the fact that the evidence was sufficient to support a finding that Range carried the firearm did not answer the question whether the jury based its verdict on the "carry" prong, rather than the "use" prong, of section 924(c)(1). After all, the last sentence of the court's instruction quoted above authorized the jury to find that the mere presence[8] of the firearm under the floor mat of Range's automobile constituted "use," provided that "the firearm played a purpose or function" in the drug transaction Range and his confederates were about

_____

[8] The penultimate sentence of the Range instruction quoted above refers to "mere presence" of a firearm; the final sentence refers to "possession" of a firearm. In the context of the case and the court's instructions to the jury – involving the presence of a firearm under the floor mat – it is obvious that the words presence and possession were interchangeable.

to consummate.

Although (in our view) the jury could have found such "use," the panel concluded that the erroneous "use" instruction did not taint the jury's finding that Range was guilty of the section 924(c)(1) offense. The panel reached this conclusion because it was able to "determine with absolute certainty that the jury based its verdict on the ground on which it was properly instructed," that is, the "carry" prong of section 924(c)(1). Id. at 620 (citing United States v. Miller, 84 F.3d 1244, 1257 (10th Cir. 1996)). Specifically, the panel stated: "The evidence of the 'carrying' of a firearm was overwhelming, and there was a complete absence of evidence from which the jury could have found 'use,' as opposed to 'carrying,' under the erroneous instruction." Id.

With two exceptions, the facts in Range fit hand and glove with the facts in the instant case. The first exception is that the firearm in Range was under the floor mat of the front seat, whereas the firearm here was located on the dashboard. This difference is immaterial. The second exception is that, in Range, the defendants were in the process of completing a drug transaction, whereas here no drug transaction was imminent. In fact, one would need a crystal ball to predict when, where, and to whom Herndon and Wilson planned to distribute the crack cocaine in their possession. To the extent that this difference is material, if at all,

11

the inference of "use" in <u>Range</u> was stronger than the inference of "use" in the case at hand. Thus, if the panel in <u>Range</u> felt bound to "determine with absolute certainty" that the jury based its verdict on the "carry" prong of section 924(c)(1), then we likewise are bound to make the same determination – unless the district court's instructions to the jury were materially different from the instructions in <u>Range</u>.

While the instructions differed in some respects, they were essentially (and materially) the same. The court here charged the jury as follows:

> Count three of the indictment charges a violation of Title 18 United States Code section 924(c) (1). This section makes it a separate crime for anyone to use or carry a firearm during and in relation to the commission of a drug trafficking crime. The defendant may be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: First, that the defendant committed the felony offense charged in either count one or count two; second, that such offense was a drug trafficking crime; and, third, that the defendant knowingly used or carried the firearm described in the indictment while committing such drug trafficking offense.

> . . .

> To establish that a firearm was used or carried during or in relation to a drug trafficking crime, the Government need not prove that the firearm was fired, brandished or even displayed during the drug trafficking crime. However, the mere presence of a firearm does not constitute use within the meaning of the law. Possession of a firearm constitutes use in relation to a drug trafficking crime if the possession is an integral part of and facilitates commission of the drug trafficking crime.
> It is enough if the firearm is present for protection or to

12

facilitate the likelihood of success, whether or not it is actually used, or to instill courage in an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge occurred.[9]

This instruction's reference to "carry" is essentially identical to the instruction's reference to "carry" in Range. This instruction's comment on "use," which required that the weapon be "an integral part of and facilitate[] commission of the drug trafficking crime," is more narrow than the instruction's comment on "use" in Range, which stated that the defendant "used" a firearm if his possession thereof "played a purpose or function in carrying out the drug-trafficking offense." Consequently, the chance that the jury in the instant case based its verdict on "use" is certainly no greater than the chance that the jury in Range based its verdict on "use."

The instruction before us did go a bit further than the instruction in Range; it informed the jury that

> [i]t is enough if the firearm is present for protection, or to facilitate the likelihood of success, whether or not it is actually used, or to instill courage in an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge occurred.

It is highly unlikely that the jury based its verdict on the second clause ("facilitate

---

[9] The portion of the instruction not included in this quotation is irrelevant in the context of this discussion.

13

the likelihood of success") or the third clause ("instill courage in an actor . . . .") of this sentence. For the jury to have based its verdict on the second clause, it would have had to find that a drug transaction was either in progress or imminent (such that the firearm could facilitate the likelihood that a drug transaction would successfully take place). It could not have made such a finding because there was no evidence before it of <u>any</u> impending drug transaction.[10] Surely, the jury could not have made such a finding beyond a reasonable doubt. For the jury to have based its verdict on the third clause, it would have had to find that Wilson had the "opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge occurred," <u>and</u> that the firearm was present on the dashboard "to instill courage." In our view, the jury could not have made such findings beyond a reasonable doubt, because there was no proof of these elements; in fact, the third clause should not have been included in the instructions in this case given the evidence before the jury.

If the jury focused on this sentence of the instruction at all, then, it must have focused on the first clause and asked itself whether "the firearm [was] for

---

[10] Of course, evidence of an impending drug transaction is not necessary to trigger the provisions of section 924(c)(1), when, as is the case here, the predicate offenses triggering those provisions are possession with intent to distribute crack cocaine and conspiracy to do the same. There is ample evidence in the record from which the jury could convict defendants of those predicate offenses.

14

protection." We believe that the jury did so, and answered the question in the affirmative. We also believe, like the panel in <u>Range</u>, that the jury found that Wilson was "carrying" the firearm as he and Herndon sat (in Herndon's car) in the convenience-store parking lot.

Judge Kravitch in her dissent suggests that the final sentence of the district court's instruction quoted above constitutes an improper "use" instruction (presumably because it follows a sentence that describes what sorts of possession will constitute "use"). We disagree. This is merely a statement on the evidence (something akin to a special interrogatory to the jury). In other words, the sentence could just as easily have begun, "It is enough to convict the defendant under this statute if . . . ." It did not just explain or describe "use" – it explained what was necessary to convict under section 924(c)(1), implicating both "use" and "carry." Therefore, this sentence added nothing material to the court's instruction that would require us to reach a conclusion different from the one the court reached in <u>Range</u>.

However, even if the district judge was attempting to define "use" in this sentence of the instruction, we still must affirm. Clearly, under the facts of this case, the "was present for protection" clause would be a proper "carry" instruction, because the gun was present in a vehicle that was a distribution center for drugs.

15

See Muscarello, 524 U.S. at ___, 118 S. Ct. at 1919. Whether the judge thought he was defining "use" and whether the jury thought they were convicting on "use" are of no moment, to the extent that the only conduct that could support a conviction of Wilson constitutes a "carry" under section 924(c)(1).

Given the virtually indistinguishable facts of Range, and the fact that any differences between that case and the present case only increase the probability that the jury here relied on the "carry" prong of section 924(c)(1) in convicting Wilson, we therefore must affirm Wilson's conviction under that statute.

III.

In contrast to Wilson, Herndon challenges all of his convictions and sentences on appeal. He contends: (1) that the evidence was insufficient to sustain his conviction on Count II of the indictment – possession with intent to distribute crack cocaine on October 17, 1994; (2) that a reversal of his conviction on Count II would require reversal of his conviction on Count III – using or carrying a firearm during and in relation to a drug trafficking offense; (3) that the evidence was insufficient to sustain his conviction on Count III;[11] (4) that the evidence was

_____

[11] Appellant Herndon did not face trial until after the Supreme Court issued its Bailey decision; thus, his indictment was properly amended to charge him only with "carr[ying]" a firearm during and in relation to a drug trafficking crime, and the jury in Herndon's case was properly instructed on the "carry" prong (and not the "use" prong) of section 924(c)(1). Herndon

16

insufficient to sustain his conviction on Count IV – possession with intent to distribute crack cocaine on July 25, 1995; (5) that the district court erred in calculating his criminal history category under the Sentencing Guidelines, see United States Sentencing Commission, Guidelines Manual, Ch.4 (Nov. 1, 1995); (6) that the court erred in overruling his objection to the distinction drawn in the Sentencing Guidelines between crack cocaine and powder cocaine, see generally U.S.S.G. § 2D1.1(c);[12] and (7) that the district court erred in concluding that it did not have the authority to consider granting him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. We consider Herndon's contentions in order.

Herndon first claims that the evidence presented at trial was insufficient to support his conviction on Count II – possession with intent to distribute crack cocaine on October 17, 1994. See supra note 7. Specifically, he argues that the Government failed to offer any evidence on one element of the offense – intent to distribute – thereby necessitating reversal of his conviction and dismissal of that

therefore makes no claim of error similar to that of Wilson regarding the "use" prong of section 924(c)(1).

[12] We have previously rejected a claim that the Sentencing Guidelines impermissibly distinguishes between crack cocaine and powder cocaine, see United States v. Byse, 28 F.3d 1165, 1170-71 (11th Cir. 1994); we therefore shall not address that claim further.

17

count of the indictment against him.[13]  We disagree.  There is evidence in the record of the following:  officers found two pill jars in Herndon's vehicle on October 17 that contained approximately seven grams of crack cocaine; that the seven grams of crack cocaine had a street value of approximately $800; officers found, in addition to the crack cocaine, a razor blade, which drug dealers often use to cut up rocks of crack cocaine they intend to distribute; and officers conducting a controlled buy of narcotics as part of a related investigation sought to purchase only $50 worth of crack cocaine (from which the jury could reasonably have inferred that an $800 quantity of crack cocaine was an amount associated with a dealer and not a consumer).  From this evidence alone, the jury could reasonably have concluded that Herndon had the intent to distribute the crack cocaine that police found in his possession on October 17, 1994; the evidence is therefore sufficient to support that conviction.

Herndon's second and third claims of error involve his conviction under Count III of his indictment for carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).  He contends that a conviction under Count III cannot survive reversal of his conviction under Count II

_____

[13] In order to obtain a conviction under 21 U.S.C. § 841(a)(1), the Government must establish the existence of three elements: (1) knowledge (of one's possession); (2) possession of a controlled substance; and (3) intent to distribute that substance.  See United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989).

18

(possession with intent to distribute crack cocaine); alternatively, he contends that the evidence was insufficient to sustain a conviction under Count III because the Government failed to prove an element of the offense – namely, that the alleged firearm[14] was a firearm as defined under 18 U.S.C. § 921(a)(3) (1994). Herndon's first argument is without merit, given our finding that the evidence was sufficient to support his conviction under Count II.

As for his second argument, we reject it as well. It is undisputed that the Government did not introduce into evidence the weapon that Officer Ronald Foston took from Herndon's car on October 17, 1994. It is also clear, however, – and Herndon concedes – that the Government is not required to offer the actual weapon into evidence in order to obtain a conviction under section 924(c)(1). Furthermore, not only did Herndon fail to object to the identification of the firearm by the officer at trial or to request a limiting instruction regarding the weapon, he did not present anything to contradict the government's evidence – in the form of testimony from Officer Foston – of the firearm. Absent any evidence to the contrary, the jury could reasonably have concluded from Officer Foston's testimony that the object he identified as a pistol was actually a firearm as defined

---

[14] For some reason, the Government did not enter into evidence the firearm the officers found on the dashboard of Herndon's car on October 17, 1994. Therefore, the only evidence of the weapon's existence before the jury was the testimony of Officer Ronald Foston.

by section 921(a)(3). Herndon's counsel did question Officer Foston as to the present location of the firearm; he responded that the weapon likely was still in the property room at the police station. Counsel's only other questions of Foston on this subject concerned whether carrying a gun was a crime in and of itself.[15] The jury could reasonably have concluded from defense counsel's exchange with Foston, as well as Foston's explanation as to the whereabouts of the firearm, that Herndon did possess a firearm on the date in question, and that it was a firearm as defined by 18 U.S.C. § 921(a)(3).

Herndon's fourth claim of error involves his conviction under Count IV – possession with intent to distribute crack cocaine on July 25, 1995; he argues that the evidence was insufficient to sustain that conviction. As noted earlier, this count of the indictment grew out of a stop at a license checkpoint. Wilson, who was driving, did not have a license, and as a result he was removed from his car and escorted to a police cruiser. Herndon waited in the passenger seat. When an officer approached the passenger side of the car and opened the door to look for Wilson's identification, he observed a black bag between the passenger seat and the passenger side door. In the bag he saw a cellophane bag containing a milky

---

[15] In fact, Herndon's counsel engaged in a lengthy discussion with Officer Foston regarding, among other things, the Second Amendment's guarantee of a person's right to bear arms, the propensity of members of the black community to carry weapons (a generalization we find highly offensive), and the general legality of carrying a firearm.

white substance (later determined to be crack cocaine). Herndon was convicted of possession with intent to distribute the crack cocaine found in the black bag. Herndon bases his insufficiency claim on his contention that the Government failed to prove an essential element of this 21 U.S.C. § 841(a)(1) offense as well – "knowledge." See supra note 12. He claims that he had no knowledge of the presence of the drugs in the car, and therefore he could not be convicted under section 841(a)(1).

This claim is without merit. As Herndon acknowledges in his brief, the Government can establish the element of knowledge with either direct or circumstantial evidence. See United States v. Quilca-Carpio, 118 F.3d 719, 721 (11th Cir. 1997) (per curiam). Of course, something more than a passenger's mere presence in a vehicle is required to establish the element of knowledge, and thus to sustain a conviction under section 841(a)(1). See United States v. Stanley, 24 F.3d 1314, 1320 (11th Cir. 1994). What is required, however, varies widely based on the individual facts of each case. In Stanley, we reversed a conviction under section 841(a)(1) because the prosecution failed to establish that the defendant had knowledge of the presence of drugs in the car in which she was a passenger. See id. at 1321. The drugs in Stanley were hidden under the dashboard, out of plain view of the passengers in the car. See id. at 1316. Nothing in the record

established that defendant Stanley knew of the drugs behind the dashboard or could even reach them from the passenger seat. See id. at 1321. Furthermore, the evidence before the jury suggested that Stanley was not a principal in the drug transaction between a police informant and another individual in the car, Cameron. What that evidence showed was that Cameron and the informant walked away from the car (out of earshot of the other passengers) to discuss the drug deal. See id. The evidence also showed that Cameron admitted ownership of the drugs after his arrest. See id. We concluded that the sparse evidence offered at trial regarding Stanley (that she could have heard the informant mention drugs when he first approached the vehicle and that she may have been the woman heard during a taped conversation between Cameron and the informant) was not sufficient to sustain her conviction under section 841(a)(1).

Stanley, however, is clearly distinguishable from the present case. Here, the drugs were not hidden; rather, the crack cocaine was in plain view between the passenger seat and the door. The cocaine was, in fact, more under the dominion of Herndon than of Wilson (given their respective positions in the vehicle). In addition, the evidence implicated Herndon and Wilson in another act of possession with intent to distribute crack cocaine, on October 17, 1994. Finally, evidence linked Herndon to a crack house only a short distance from the license checkpoint

22

where the police stopped appellants. All of this circumstantial evidence could have led the jury rationally to conclude, beyond a reasonable doubt, that Herndon knew of the existence of the drugs directly beside him in the vehicle. Of course, it is clear that he constructively possessed the drugs (given his proximity to them), and his intent to distribute the drugs could be inferred from the large quantity found in his possession. We therefore conclude that the evidence presented at trial was sufficient to support Herndon's conviction under Count IV.

In his fifth claim of error, Herndon contends that the district court erred in calculating his Criminal History Category under the Sentencing Guidelines.[16] Herndon objected to the inclusion in his presentence investigation report (PSI) of a prior conviction for carrying a concealed weapon; he claimed he had no recollection of such conviction.[17] The probation officer who prepared Herndon's PSI was not present at Herndon's sentencing hearing; she had been transferred to another probation office. A substitute probation officer therefore attended the hearing. After listening to Herndon's objection, the court questioned the officer

---

[16] We review the district court's application of the Sentencing Guidelines de novo, and its findings of fact for clear error. See United States v. Miller, 166 F.3d 1153, 1155 (11th Cir. 1999) (per curiam).

[17] There is actually some dispute as to whether he objected to the conviction or only to the arrest. This dispute does not affect our holding on this matter, and we therefore need not resolve it.

extensively regarding this conviction. The officer answered many of the questions by reviewing the notes of his predecessor, who had traveled to the municipal court building in Tuskegee to confirm Herndon's prior conviction through review of court documents. His predecessor had also obtained a copy of the arrest record, though it is unclear whether it was introduced as evidence at the sentencing hearing. The court found, from its on-the-record colloquy with the probation officer and its review of the PSI, that Herndon had been fined for this offense, and that therefore he must have been found guilty of it.

We find no clear error in the district court's finding. A court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the information is sufficiently reliable. See United States v. Castellanos, 904 F.2d 1490, 1495 (11th Cir. 1990). While the best approach would always be to produce a certified copy of the conviction, we find the sources the district court relied upon – a PSI, the on-the-record statements of a probation officer, and the notes of another probation officer – when taken together, were sufficiently reliable to support the court's finding that Herndon had been convicted of the weapons charge in question. The court therefore did not err in considering this prior conviction when determining Herndon's Criminal History Category for

sentencing purposes.

Herndon's sixth claim of error involves the district court's failure to grant him a two-level reduction in his base offense level for his acceptance of responsibility. We review a court's application of the Sentencing Guidelines de novo. See United States v. Miller, 166 F.3d 1153, 1155 (11th Cir. 1999). Herndon's claim is that the district court erroneously believed it lacked the authority to grant his request for a two-level acceptance of responsibility reduction. If the court entertained such belief, it erred. See United States v. Chase, 174 F.3d 1193, 1195 (11th Cir. 1999) (stating that this court has jurisdiction to review a district court's holding that it lacks discretionary authority to depart downward).

At the sentencing hearing after Herndon assumed responsibility for his criminal conduct, and his attorney requested a two-level reduction under U.S.S.G. § 3E1.1, the district judge stated as follows: "I don't know of any law that would allow me to be more lenient on you than I am." This was a misstatement of the law. Section 3E1.1 permits the sentencing court to grant a defendant a two- or three-level reduction of his base offense level if the defendant accepts responsibility for his actions. Furthermore, application note 2 to section 3E1.1 clearly states that conviction by trial (rather than following a guilty plea) does not preclude a judge from granting this downward adjustment (though the exceptions

25

are limited and may not be applicable in Herndon's case). Therefore, the court erroneously determined that it did not have the authority to make this downward adjustment, and we must remand Herndon's case for the limited purpose of allowing the district court to determine, at a new sentencing hearing, whether he is eligible for such an adjustment in his base offense level for Counts II and IV.

IV.

For the forgoing reasons, we AFFIRM Wilson's section 924(c)(1) conviction, and we AFFIRM Herndon's convictions on all counts, but we VACATE Herndon's sentences and REMAND his case for further proceedings consistent with this opinion.

SO ORDERED.

KRAVITCH, Senior Circuit Judge, dissenting in part and concurring in part:

I concur in Parts I and III of the majority opinion. I cannot join Part II of the opinion, however, because I am unable to determine with absolute certainty that the jury did not convict Charles Wilson of <u>using</u> a weapon during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), on the basis of jury instructions that were at odds with the Supreme Court's decision in <u>Bailey v. United States</u>, 516 U.S. 137, 116 S. Ct. 501 (1995). Our precedent requires us to reverse Wilson's section 924(c)(1) conviction and remand his case for a new trial; accordingly, I respectfully dissent.

As the majority opinion recounts, Wilson challenges his conviction for using or carrying a firearm during and in relation to a drug trafficking offense on the ground that the district court's instruction to the jury conflicts with the Supreme Court's unanimous definition of "use" of a firearm in <u>Bailey</u>. Nevertheless, because a police officer discovered the weapon on the dashboard of a car in which Wilson was a passenger, the evidence would have been sufficient to support a conviction for <u>carrying</u> the firearm. <u>See</u> <u>Muscarello v. United States</u>, __ U.S. __, 118 S. Ct. 1911 (1998).

We considered an analogous case in <u>United States v. Range</u>, 94 F.3d 614

27

(11th Cir. 1996), and concluded that we could affirm a conviction under section 924(c)(1) despite a similarly erroneous instruction.  We held that section 924(c)(1) was an "alternative means" statute and that the jury, therefore, could convict a defendant for either using or carrying a weapon.  Id. at 619.  In the face of a legally erroneous instruction on one of the alternative means, however, we explained that "[a] court must . . . be able to 'determine with absolute certainty that the jury based its [general] verdict on the ground on which it was properly instructed.'" Id. at 620 (quoting United States v. Miller, 84 F.3d 1244, 1257 (10th Cir. 1996)).

The Range court affirmed the defendant's conviction under the "carry" prong of section 924(c)(1) because it found "a complete absence of evidence from which the jury could have found 'use,' as opposed to 'carrying,' under the erroneous instruction." Id. (emphasis added).  The police in that case found a gun under the floormat on the passenger side of the vehicle, and the erroneous instruction informed the jury that possession of a firearm would not constitute use unless "the firearm played a purpose or function in carrying out the . . . offense."[18]   The court

---

[18]    In pertinent part, the jury in Range received the following instruction:
To show use of the firearm the government need not prove that the firearm was fired, brandished, or even displayed during the drug-trafficking offense. However, mere presence of the firearm would not constitute use within the meaning of the statute.  Rather, possession of a firearm constitutes use in relation to the drug-trafficking offense if the firearm played a purpose or function in carrying out the drug- trafficking offense.
Range, 94 F.3d at 617.

28

concluded that because the evidence overwhelmingly supported a conviction for carrying the weapon and provided no support for a use conviction *in compliance with the district court's instruction*, the jury must have based its general verdict on the correct grounds. Id. at 620.[19]

I agree with the majority opinion's annunciation of the law but find myself at odds with its application of the law to the facts of Wilson's case. The evidence supports a conviction for carrying the weapon, but it is far from clear whether Wilson's jury "must have" convicted him on that basis. First, and as the majority concedes, the pre-Bailey jury instruction the court gave in this case went further than the one we considered in Range. In addition to instructing that the "mere presence of a firearm" would not constitute "use," as in Range,[20] the district court

---

[19] We applied a similar analysis in United States v. Quinn, 123 F.3d 1415, 1428-29 (11th Cir. 1997), and found that the jury could not have convicted the defendant of using the weapon—as instructed by the district court—because police discovered the weapon some 60 feet away from the defendant. Only then did we uphold the § 924(c)(1) conviction under the carry prong because the weapon was in the defendant's car, which he had driven to the location of the drug transaction. Id.

[20] To this extent the first part of the instruction in this case differs from the one considered in Range, quoted supra at note 1, the differences are superficial:

> To establish that a firearm was used or carried during or in relation to a drug trafficking crime, the government need not prove that the firearm was fired, brandished, or even displayed during the drug trafficking crime. However, the mere presence of a firearm does not constitute use within the meaning of the law. Possession of a firearm constitutes use in relation to a drug trafficking crime if the possession is an integral part of, and facilitates the commission of, the drug trafficking crime.

Jury Ins., R1-44 at 8.

in this case told the jury:

> It is enough if the firearm is present for protection or to facilitate the
> likelihood of success, whether or not it is actually used, or to instill
> courage in an actor who had the opportunity or ability to display or
> discharge the weapon to protect himself or intimidate others, whether
> or not such display or discharge occurred.[21]

This portion of the instruction is ambiguous because it does not specify whether the conduct described is sufficient to convict the defendant of using or of carrying the weapon.[22] The jury, therefore, easily could have relied upon this language to convict Wilson under the use prong of section 924(c)(1). If, for example, the jury concluded that the presence of the gun on the defendants' dashboard offered Wilson protection, passively facilitated Wilson's drug dealing, or emboldened him as he drove around town in possession of a significant quantity of crack cocaine, the instruction erroneously would have permitted the jury to convict Wilson of

---

[21] Jury Ins., R1-44 at 8.

[22] The majority opinion admits as much in its statement that "th[is] sentence [of the instruction] could just as easily have begun, 'It is enough to convict the defendant under this statute if . . . .' It did not just explain or describe 'use' -- it explained what was necessary to convict under section 924(c)(1), implicating both 'use' and 'carry.'" Maj. Op. at 12. Contrary to the majority's assertion, however, I do not suggest that this sentence is a use instruction, only that it is impossible to tell whether the sentence refers to a defendant's use, carrying, or both.

using—not carrying—the weapon even though he never actively had employed the weapon as <u>Bailey</u> requires.

The majority contends that the jury could not have relied upon this language to convict Wilson of using the firearm. The majority begins its argument by asserting that the jury could not have relied upon the facilitation of success language in the quoted instruction because there was no evidence that a drug transaction was imminent. <u>See</u> Maj. Op. at 11; <u>see also</u> <u>id.</u> at 9 (suggesting that the imminence of a drug transaction in <u>Range</u> implied use). The majority offers neither argument nor case support for its suggestion that the imminence of a drug transaction necessarily implies the use prong of section 924(c)(1) over the carry prong. The majority's failure, however, is of no matter because the imminence of a drug transaction is a <u>non sequitur</u> in the context of this case. Section 924(c)(1) requires that the defendant use or carry the firearm "during and in relation to any . . . drug trafficking crime," and is not limited to drug transactions. In this case, Wilson's possession of cocaine base with the intent to distribute it and his conspiracy to do the same supplied the predicate drug trafficking crimes. The question before the jury, therefore, was whether Wilson had used or carried the weapon "during and in relation to" those crimes—not whether he had used or carried the weapon in connection with an impending drug transaction. In my view,

31

the jury easily could have concluded that the firearm's presence facilitated the likelihood of success of Wilson's conspiracy to distribute crack cocaine. Indeed, our own frequent observation that weapons constitute virtually indispensable tools of the drug trade,[23] draws into substantial question the majority's conclusion that a jury could not have found that the gun in this case facilitated the success of Wilson's drug conspiracy. As a result, the majority opinion's independently unconvincing distinction between using and carrying a firearm serves no purpose because it cannot reassure us, as Range requires, that the jury could not have convicted Wilson of using rather than carrying the weapon.

I also respectfully disagree with the majority's contention that the jury could not have found that the open presence of the gun on the car's dashboard emboldened Wilson as he conducted his illegal activity. The majority contends that the jury could not have found both that Wilson had an opportunity to display the weapon for protection or intimidation and that the firearm instilled confidence

---

[23] We quoted the former Fifth Circuit on this point to uphold a jury's verdict that gun violence and murder were reasonably foreseeable consequences of a drug conspiracy:
> Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment, and other narcotic equipment.

United States v. Alvarez, 755 F.2d 830, 849 (11th Cir. 1985) (quoting United States v. Perez, 648 F.2d 219, 224 (5th Cir. Unit B, June 15, 1981) (additional citations omitted). See also, United States v. Ramsdale, 61 F.3d 825, 829-30 (11th Cir. 1995) (noting that guns are tools of the drug trade) (citing cases); United States v. Hromada, 49 F.3d 685, 689 & n.8 (11th Cir. 1995) (same).

32

in Wilson. See Maj. Op. at 11. Wilson obviously had the opportunity to display the weapon because the sole reason for Wilson's initial detention on October 17, 1994 was a police officer's observation of the weapon on the dashboard. Id. at 3. Furthermore, the prosecutor's theory of the case concerning Wilson's section 924(c)(1) charge was that the weapon had instilled him with courage and emboldened him while he was in possession of large quantities of cocaine. During closing argument, the prosecutor told the jury:

> You know when people go out and they drink, and they get what's called 'Budweiser courage'? That's what that gun is like. It instills courage in an actor like Mr. Wilson who has the authority to discharge it.[24]

Absent some suggestion that the prosecutor improperly misrepresented the evidence to the jury during the government's closing argument, the jury certainly could have concluded that the weapon had emboldened Wilson as he engaged in his illegal activity and thus "used" the weapon to facilitate the drug transaction.

The majority concedes that the evidence would have permitted the jury to rely upon the first clause of the instruction's last sentence to conclude that the

---

[24] Dist. Ct. Mem. Op., R1-71 at 3-4 (quoting the prosecutor's argument).

firearm was present for protection. <u>See</u> Maj. Op. at 11-12. I agree that the jury could have relied upon this section of the instruction and found (correctly) that the evidence supported Wilson's conviction for carrying the weapon. Furthermore, I have no quarrel with the majority's observation that it would not matter whether some or all of the jurors thought they were convicting Wilson of using rather than carrying the weapon. <u>Cf. Range</u>, 94 F.3d at 619 (noting that a section 924(c)(1) conviction does not require "jury unanimity . . . with respect to the 'use' and 'carry' elements"). The equally probable possibilities that the jury relied upon one of the other two clauses of the instruction—neither of which would fit comfortably under section 924(c)(1)'s carry prong—however, preclude our reliance on this possibility to affirm Wilson's conviction. The majority's analysis fails to acknowledge the broader implications of the instruction the court gave in this case and ignores what the jury <u>could have</u> found while faithfully applying the particular language quoted above. <u>See</u> <u>United States v. High</u>, 117 F.3d 464, 470 (11th Cir. 1997) (citing <u>Range</u> in support of the proposition that the mere <u>possibility</u> that the jury may have convicted on the proper grounds is insufficient to affirm a conviction).

In addition to my reluctance to join the majority's speculation—from a cold appellate record—about what the jury must have decided when it entered its general verdict over three years ago, I find substantial reason for pause in the

district court's order on this matter. The court's order explained that it was extremely unlikely that the jury had based its verdict on the carry prong of section 924(c)(1). The district court observed that the charge to the jury and the government's theory of the case both relied upon the use prong of the statute and ignored the carry prong:

> Because both the court and the government emphasized the 'use' prong of § 924(c)(1), it is likely that the jury convicted Wilson of using rather than carrying a firearm. . . . Thus, it appears extremely likely that the erroneous instruction on the definition of the word "use" deprived Wilson of a fundamentally fair trial, and that Wilson is entitled to a new trial on this charge.[25]

Although I agree that a properly instructed jury could have found Wilson guilty of carrying the weapon, given this report from the court of first instance, I do not see how we can find that the jury must have convicted Wilson of carrying rather than using the pistol.

Finally, even if we could claim to be convinced that the jury must have convicted Wilson of carrying rather than using the weapon in question, it is by no

---

[25] Dist. Ct. Mem. Op., R1-71 at 4-5 (internal punctuation, citation, and quotation omitted).

means clear that the jury received a proper instruction on that issue either. The

Range court based its holding on the assumption that the district court correctly

had charged the jury on the carrying prong of section 924(c)(1), see Range, 94 F.3d

at 620, despite the defendant's argument to the contrary on appeal because the

defendant specifically had waived the argument before the district court, id. at 617.

We have no such waiver before us in this case, and the district court's charge to the

jury does not define "carry."[26] This omission further suggests that the jury did not

convict Wilson on a charge for which it had received a proper instruction.

The majority's opinion casts us, not in the familiar role of appellate judges,

but as jurors, finding Wilson guilty of violating section 924(c)(1) on a theory

markedly different from the one presented at trial. Although we all could agree

that the government's evidence would support Wilson's conviction for carrying a

firearm during and in relation to a drug trafficking offense, the law requires a

properly instructed jury to make that determination in the first instance. I am

convinced that Range requires us to reverse Wilson's section 924(c)(1) conviction

and remand his case for a new trial; I respectfully DISSENT.

---

[26]    See Jury Ins., R1-44 at 7-8; see also Dist. Ct. Mem. Op.,
R1-71 at 1-2 (explaining that although both the court's
instruction and the government's argument referred to the carry
prong of § 924(c)(1), neither provided a definition for the
term).