**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-13371

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JASON EDWARD LOPEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cr-80054-DMM-1

_____

Before LUCK, LAGOA, and WILSON, Circuit Judges.

LUCK, Circuit Judge:

Jason Edward Lopez defrauded Medicare and the Small Business Administration. He pleaded guilty and was sentenced to forty-eight months in prison. Lopez appeals his sentence, arguing that the district court erred in calculating his advisory guideline

range because the loss amount it used was too high and the acceptance-of-responsibility reduction it made was too low. After careful review, and with the benefit of oral argument, we agree with Lopez that the district court miscalculated his guideline range because the acceptance-of-responsibility reduction was too low, and the error was not harmless. So, we vacate his sentence and remand for resentencing with the correct guideline range.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2019 and 2020, Lopez conspired with three others to defraud Medicare—a federal healthcare program that provides low-cost benefits to the elderly and disabled. Lopez co-owned and operated two companies that sold medical equipment to Medicare beneficiaries. Medicare paid for the equipment when it was prescribed by a doctor as medically necessary for a beneficiary.

Lopez's scheme involved paying healthcare marketers for doctors' orders prescribing the medical equipment his companies sold, even though the equipment was not medically necessary. When beneficiaries purchased the equipment, Lopez billed Medicare for it. Lopez and his coconspirators submitted nearly $2.6 million in fraudulent claims to Medicare, and Medicare paid more than $900,000 based on the claims.

While Lopez was in the midst of his Medicare fraud scheme, he applied for an Economic Injury Disaster Loan from the Small Business Administration for $105,000. Congress authorized these loans as part of a Covid-19 relief package, and they came with forgivable advances of up to $10,000. Lopez's loan application falsely

represented that his company was not engaged in any illegal activity. Based on this misrepresentation, Lopez's company received an advance of $7,000 from the Administration.

In April 2022, a federal grand jury indicted Lopez on four counts of healthcare fraud, one count of wire fraud, one count of conspiracy to commit healthcare fraud and wire fraud, three counts of paying kickbacks in connection with a federal healthcare program, and one count of conspiracy to defraud the United States through illegal kickback payments. Lopez pleaded guilty to the charges without a plea agreement.

Before Lopez's sentence hearing, the probation office prepared a presentence report. The report found that Lopez intended to collect roughly $2.7 million from his fraud schemes, but that he had actually collected only $910,937.

Based on this finding, the report calculated Lopez's guideline range using a base offense level of seven under United States Sentencing Guidelines section 2B1.1(a)(1). It then increased his offense level by sixteen under section 2B1.1(b)(1)(I) because Lopez intended between $1.5 million and $3.5 million of loss to Medicare and the Administration from his fraud schemes. The report also added two levels under section 2B1.1(b)(7) because the Medicare scheme involved a federal healthcare offense with an intended loss of more than $1 million. And the report added another three levels under section 3B1.1(b) because of Lopez's leadership role in the fraud schemes. Finally, the report subtracted three levels because

Lopez accepted responsibility for his crimes.    *See* U.S.S.G. § 3E1.1(b).

Lopez objected to the loss amount.  He argued that the loss amount should be calculated based on the actual loss Medicare and the Administration suffered from his fraud schemes—a little over $900,000—rather than the amount he intended to steal—around $2.7 million—as the probation office used to calculate loss.  Using the actual loss amount would reduce his offense level by four.

At the sentence hearing, the district court overruled Lopez's objection and used intended loss to calculate his guideline range. Then, for the first time, the government argued that Lopez should only get a two-level reduction for accepting responsibility instead of a three-level reduction.  The government explained that it would not recommend a three-level reduction because Lopez had delayed the sentence hearing several times.

The district court was "surprised" because the government "didn't object" to the three-level reduction in the presentence report.  Still, believing it was bound by the government's recommendation, the district court adjusted Lopez's offense level to account for the change.  With the new offense level, Lopez's guideline range was sixty-three to seventy-eight months' imprisonment.  But the district court also said it "may adjust" for the government's failure to request the three-level reduction when imposing Lopez's sentence.

In the end, the district court sentenced Lopez to forty-eight months in prison.  Before announcing the sentence, the district

court explained that it "consider[ed] the fact that the government didn't object to" the three-level reduction in the presentence report.

## STANDARD OF REVIEW

We review de novo a district court's interpretation and application of the sentencing guidelines, including its belief that it lacked authority to award the three-level reduction for accepting responsibility. *See United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir. 1999); *see also United States v. Maxwell*, 579 F.3d 1282, 1305 (11th Cir. 2009) (explaining we review de novo a district court's interpretation of the guidelines as to the amount of loss).

## DISCUSSION

There are two issues in this appeal. First, Lopez contends that the district court erred by using intended rather than actual loss to set the loss amount from his fraud schemes. Second, he argues that the district court erred by reducing his offense level by two rather than three for accepting responsibility.

*The district court did not err by calculating Lopez's guideline range based on intended loss*

Turning to the first issue, Lopez contends that the district court erred in calculating loss by using the higher amount that he intended to defraud Medicare and the Administration, rather than using the actual loss from his fraud schemes. Using the proper, actual loss amount, his guideline range should have been forty-one

to fifty-one months instead of sixty-three to seventy-eight months' imprisonment.

Section 2B1.1 is the fraud guideline. *See* U.S.S.G. § 2B1.1. Under section 2B1.1(a), an offender starts with either six or seven base offense levels depending on the offense. *See id.* § 2B1.1(a). Then, more levels are added depending on the amount of the loss from the fraud scheme. *See id.* § 2B1.1(b)(1). For example, if the loss was between $550,000 and $1.5 million, then fourteen levels are added to the base offense level. And if the loss was between $1.5 million and $3.5 million, then sixteen levels are added. *Id.* There's also a special rule for federal healthcare offenses involving a government program. For these fraud schemes, two more levels are added when the loss to the program was between $1 million and $7 million. *Id.* § 2B1.1(b)(7).

When Lopez's sentence was imposed, the text of section 2B1.1 did not define "loss," although the commentary did.[1] The parties differ on what the term means. To Lopez, "loss" means actual loss. To the government, "loss" means actual or intended loss.

We sided with the government's reading in *United States v. Horn*, 129 F.4th 1275 (11th Cir. 2025). There, we held that the term "loss" in section 2B1.1(b)(1) was unambiguous, and it meant "the

---

[1] Since then, the fraud guideline was amended to define "loss" as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1(b)(1)(A) (Nov. 2024).

greater of actual loss or intended loss." *Id.* at 1300. Thus, we explained, a district court "correctly use[s] intended loss for sentencing purposes rather than limiting its analysis to actual loss." *Id.*

That's what the district court did here. It correctly used intended loss to calculate Lopez's loss amount under section 2B1.1(b). So, no error has been shown as to the loss amount.

*The district court erred by not applying the three-level acceptance-of-responsibility reduction, and the error was not harmless*

The acceptance-of-responsibility reduction is another matter. Although the government did not object to the three-level reduction for accepting responsibility in the presentence report, at the sentence hearing it argued that the reduction should be two levels and not three. In arguing for the two-level reduction, the government inaccurately told the district court that Lopez had delayed the sentence hearing multiple times. Relying on the inaccuracy, the district court believed it was hamstrung in reducing Lopez's offense level by two levels instead of three.

The government now concedes that it "did not sufficiently justify . . . withholding" its request for the three-level reduction. *See United States v. Johnson*, 980 F.3d 1364, 1380 (11th Cir. 2020) ("[J]udicial review is available to determine whether the [g]overnment has improperly refused to make a [section] 3E1.1(b) motion."). Because the record shows that Lopez didn't delay the sentence hearing, both sides agree that "the district court's denial of the third [level] was error." Still, the government contends that

reversal is unwarranted because the error was harmless. We disagree.

"An error in the district court's calculation of the [s]entencing [g]uideline[] range warrants vacating the sentence, unless the error is harmless." *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009). An error is harmless "when the government can show, beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence." *United States v. Focia*, 869 F.3d 1269, 1287 (11th Cir. 2017). In other words, the government must show beyond a reasonable doubt that "the district court would have imposed the same sentence without the error." *Barner*, 572 F.3d at 1248.

One way the government can satisfy its harmless-error burden is by pointing to a *Keene* statement at the sentence hearing. *See United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). A *Keene* statement is shorthand for when a "district judge clearly states that [s]he would impose the same sentence, even if [s]he erred in calculating the guidelines." *Barner*, 572 F.3d at 1248 (citing *Keene*, 470 F.3d at 1349). A *Keene* statement doesn't require magic words, but it does require the district court to be clear that it would impose the same sentence regardless of the calculation error. *See United States v. Grushko*, 50 F.4th 1, 19 n.7 (11th Cir. 2022) (applying *Keene* to find procedural error harmless where district court confirmed that its "sentence w[ould] remain the same" with or without a disputed enhancement because it was "clear that the district court intended to impose the same sentence, regardless of any error in the

guideline[] calculation"); *United States v. Eason*, 953 F.3d 1184, 1195 n.8 (11th Cir. 2020) (declining to apply *Keene* where district court "never stated on the record that the enhancement made no difference to the sentence it imposed" (citation modified)); *Barner*, 572 F.3d at 1248 (declining to apply *Keene* where district court stated it was applying a guideline sentence without specifying that it would have imposed the same sentence if there were errors in the guideline calculation).

The government contends that the district court here satisfied *Keene*'s requirements because it "indicated that it would have imposed the same sentence regardless of whether Lopez received an additional one-[level] reduction." It points to three parts of the sentence hearing in support. First, the government relies on the district court's statement, after the government argued for the two- rather than the three-level reduction, that the court "may adjust for that when it comes to sentencing." Second, the government says the district court was familiar with what the guideline range would have been had the three-level reduction been applied, because the district court originally calculated the range based on the presentence report's recommendation. And third, the government cites the district court's statement that one factor it considered in imposing the sentence was "the fact that the government didn't object to th[e] third [level] for acceptance."

The government is right that, based on these three parts of the record, the district court may have imposed the same sentence regardless of the error. And it may yet do so on remand. But, after

careful review, we cannot say beyond a reasonable doubt that the district court would have done so. *See Focia*, 869 F.3d at 1287. The district court never "clearly state[d] that [it] would impose the same sentence, even if [it] erred in calculating the guidelines." *See Barner*, 572 F.3d at 1248. Instead, the district court explained that it "may adjust" for the third level, and that it was "considering" the government's failure to object to the presentence report's three-level reduction. These indefinite statements leave room for reasonable doubt about whether the district court would have imposed a different sentence had the guideline range been lower.

Because the district court started from an incorrect guideline range, and because we have some doubt about whether the error contributed to Lopez's sentence, the government cannot show that the error was harmless. *See Molina-Martinez v. United States*, 578 U.S. 189, 201 (2016). Lopez must be resentenced after correctly calculating his guideline range. *See Barner*, 572 F.3d at 1247, 1251.[2]

**VACATED AND REMANDED.**

---

[2] Because we are vacating Lopez's sentence on the acceptance-of-responsibility issue, we do not need to decide his alternative argument that his sentence was substantively unreasonable.